```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                       CHARLOTTE DIVISION
                       3:08CV305-02-MU
```

```
ROGER STEVENSON,           )
     Plaintiff,            )
                           )
         v.                )
                           )
APRIL SHOUP, Unit Manager  )
  at the Marion Correc-    )
  tional Institution;      )            O R D E R
JASON DOBSON, Unit Case    )
  Manager at MCI; and      )
TURNER SOUTH, Classifica-  )
  tion Coordinator at      )
  MCI,                     )
     Defendants.           )
_____)
```

**THIS MATTER** comes before the Court on Plaintiff's civil rights Complaint under 42 U.S.C. § 1983, filed June 27, 2008 (document # 1); on his Motion for Preliminary Injunction and Temporary Restraining Order, filed October 14, 2008 (document # 25); on his Motion for a Copy of the Local Rules, filed October 14, 2008 (document # 26); on his Motion for Appointment of Counsel, filed October 14, 2008 (document # 27); on Defendants' Answer, filed October 29, 2008 (document # 28); on Plaintiff's Motion for Emergency Preliminary Injunction and a Temporary Restraining Order, filed November 20, 2008 (document # 30); on Defendants Motion for Summary Judgment, filed November 20, 2008 (document # 32); on Plaintiff's Motion for Discovery Conference,

filed January 21, 2009 (document # 35); on his Motion for Preliminary Hearing and Pretrial Conference on Defendants' Motion for Summary Judgment, filed January 21, 2009 (document # 36); on his Motion for Filing Papers, filed January 21, 2009 (document # 37); and on Defendants' Motion for a Protective Order, filed February 11, 2009 (document # 43).

According to Plaintiff's Complaint, in October 2005, he was convicted of a prison infraction and served a term of 30-days segregated confinement. Days after completing his 30-day term and being returned to the general population, Plaintiff allegedly was placed in intensive confinement status ("ICON," hereafter) for a 180-day period, all without additional charges or a hearing. Thus, Plaintiff alleges that his rights to due process were violated; and that he was subjected to false imprisonment, to cruel and unusual punishment and to double jeopardy by virtue of Defendants having twice punished him for a single infraction. By way of relief, Plaintiff seeks, among other things, tens of millions of dollars in damages.

On October 29, 2008, Defendants filed a response asserting that since the time that Plaintiff initially was incarcerated in or about 1995, he has been convicted of numerous disciplinary infractions. More recently, in August 2005, Plaintiff was convicted of being in an unauthorized location in his prison, and in October 2005, he was convicted of assaulting another inmate, for

2

which offense he served 30 days of segregated confinement. However, prior to Plaintiff's release from segregation, in light of his record of infractions, Defendant Dobson determined that Plaintiff should be referred to the Facility Classification Committee ("FCC," hereafter) for placement on ICON status. Thus, once Plaintiff was released from segregated confinement he was placed in administrative segregation pending the ICON review process. On the following day, the ICON referral was made. Plaintiff timely appeared before the FCC and was referred for an ICON hearing before the Director's Classification Committee ("DCC," hereafter). Following a timely hearing before the DCC, Plaintiff was placed on 180 days of ICON status in accordance with the relevant prison policies.

Furthermore, Defendants Shoup and Dobson deny that they are members of either of the Committees which reviewed Plaintiff's case; and all Defendants deny that Plaintiff's constitutional rights were in any way violated by their actions. Thus, Defendants asserted that Plaintiff's Complaint be dismissed.

On November 20, 2008, Defendants filed a Motion for Summary Judgment. Defendants' supporting Brief presents an evidentiary forecast which is consistent with the critical portions of their Answer. That is, Defendants' forecast reflects the following:

1.  Plaintiff was on ICON status from March to July 2005. (Stallings Affidavit, document # 32-3 at 5).

2. ICON status is used, among other reasons, to enhance control of inmates whose conduct includes a repeated failure to respond to less restrictive methods of control, such as the ordinary disciplinary process. (Stallings Affidavit, document # 32-3 at 2).

3. In August 2005, Plaintiff was convicted of being in an unauthorized location of the Prison. (Defendants' Answer, Ex. C at 3).

4. In early October 2005, Plaintiff pled guilty to assaulting another inmate, and was placed in segregated confinement for 30 days. (Defendants' Answer, Ex. B at 2).

5. In early November 2005, Plaintiff returned to general population, but days later was placed in administrative segregation by Defendant Shoup pending Defendant Dobsons's referral of Plaintiff for ICON status review. Such referral was based upon Plaintiff's 74 infractions, his prior placements on ICON and the more restrictive maximum control status ("MCON," hereafter), and on his failure to remain infraction free following his July 2005 release from ICON status. (Defendants' Answer, Ex. C).

6. On or about November 9, 2005, Plaintiff appeared before the FCC. (Defendant's Answer, Ex. E). After hearing Plaintiff's explanation that the most recent assault "was all a big misunderstanding," the FCC determined that Plaintiff should undergo a review by the DCC for a determination of the

4

application of ICON status. (Id.).

7. On or about November 15, 2005, Plaintiff appeared before the four-member DCC, on which Committee Defendant South is a member, and merely stated that his most recent infraction was "just a little fight." (Stallings Affidavit, document # 32-3 at 4). However, in light of his record, the DCC placed Petitioner on ICON status for six months. (Id. at 5).

8. Six months after that determination, Plaintiff was continued on ICON status for an additional violation; and at his next six-month review, Plaintiff actually was demoted to MCON status due to additional infractions, including an assault on a staff member. (Id).

9. At the time that Defendants filed their Motion for Summary Judgment, Plaintiff still was on MCON status because of continued negative behavior. (Id.).

In addition to this evidentiary presentation, Defendants argue that prison disciplinary convictions are not comparable to criminal prosecutions so as to trigger application of double jeopardy principles; and that Plaintiff's ICON status did not rise to the level of a significant hardship in relation the ordinary incidents of prison life so as to violate his rights under the Due Process Clause. Therefore, Defendants contend Plaintiff's purported federal claims should be summarily rejected. Defendants further argue that in light of the

5

insufficiency of Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over his State law claim of false imprisonment. Thus, Defendants ask this Court to Dismiss Plaintiff's Complaint in its entirety.

On November 25, 2008, Plaintiff filed a Declaration in Opposition to Defendants' Motion for Summary Judgment; and on January 13, 2009, he filed a Brief in Opposition to Defendant's Motion for Summary Judgment. Plaintiff's Declaration, which was executed under penalty of perjury, essentially reiterates his assertion that Defendants conspired to violate his rights when they briefly placed him in administrative segregation and then on ICON status based upon the assault, and not some new infraction.

Notably however, Plaintiff does not deny that he sustained the August 2005 conviction after having been released from ICON in July 2005, or that he previously had sustained the numerous additional convictions which were listed in the DCC's hearing report. Rather, Plaintiff asserts that neither the fact that he had 74 prior convictions for infractions, that he previously had been placed on "MCON status, that he had been placed on ICON status, that he recently had gotten off of ICON status, nor the fact that he recently had sustained two infractions was enough to justify his being placed back in ICON status. Plaintiff believes that because he already was punished for the assault, Defendants could not rely upon that offense to refer him for ICON status.

6

He also contends that his placement on ICON was not pursuant to policy because neither his August nor October infractions justified ICON status. Plaintiff also claims that "more than 50% of [those] prior infractions are the result of the same conspiracy dealings and corrupt, behind-the-scenes deceptions that are going on in this case;" and that none of those matters have any relevance to the issues in this case.

In addition, Plaintiff "disagree[s] with Defendants' version of the Double Jeopardy Clause." Likewise, he "disagree[s]" with Defendants' contentions that his placement in ICON status did not trigger and violate any liberty interest which he may have had, and that this Court should decline to exercise its supplemental jurisdiction. By his second Response (document # 34), Plaintiff reasserts his earlier arguments against Defendants' Motion for Summary Judgment. Nevertheless, after having carefully considered the foregoing documents and the relevant law, the Court finds that Defendants are entitled to a summary judgment. To be sure, the undisputed facts preclude Plaintiff's recovery under either of the causes of actions which he has pled.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as

to those facts." Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (internal quotation mark omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Cloaninger ex rel. Estate of Coaninger v. McDevitt, 555 F.3d 324, 332 (2009).

In the instant case, Plaintiff, quite simply, has failed to forecast any evidence to establish that the Double Jeopardy Clause is applicable in the prison context. In Breed v. Jones, 421 U.S. 519, 528 (1975), the Supreme Court noted that "jeopardy describes the risk that is traditionally associated with a criminal prosecution." Thus, "the risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal.'" Id. Equally significantly, in Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Court determined that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply (emphasis added). Consequently, the Court finds that Plaintiff cannot state a claim for a double jeopardy violation on the basis of his being placed on ICON status.

Plaintiff also has failed to forecast evidence to show that

8

he has a liberty interest in avoiding ICON status or administrative segregation such that his placement in either was a violation of his constitutional rights. Indeed, in <u>Sandin v. Connor</u>, 515 U.S. 472, 480 (1995), the Court expressly noted that the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." (internal quotation omitted). Ultimately, <u>Sandin</u> found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law"; therefore, inmates cannot claim that their placement into punitive segregated confinement presents the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Id</u>. at 485-86. On this basis, therefore, Plaintiff cannot state a claim on the basis of his due process allegation.

Likewise, Plaintiff has failed to forecast evidence to show a cognizable claim under the Eighth Amendment's cruel and unusual punishment prohibition. On the contrary, in <u>Sweet v. South Carolina Dep't of Corrections</u>, 529 F.2d 854, 861 (4th Cir. 1975) the Fourth Circuit long ago determined that the mere fact of segregated confinement, without more, does not amount to cruel and unusual punishment.

Moreover, in light of the Court's determinations that Plaintiff's federally based allegations cannot proceed, the Court

9

also must determine whether it should exercise its supplemental jurisdiction in order to entertain Plaintiff's allegation of false imprisonment. Because Plaintiff likely would not be able to pursue this claim in North Carolina's courts due to statute of limitations concerns, the Court will exercise its supplemental jurisdiction and review this claim. <u>See</u> <u>Cole v. Cole</u>, 633 F.2d 1083, 1091 (4th Cir. 1980) (noting three-year statute of limitations under North Carolina law for false imprisonment claims).

Having done so, the Court finds that Plaintiff is not entitled to any relief on this allegation. That is, North Carolina defines the offense of false imprisonment as "the illegal restraint of one's person against his will." <u>McDevitt</u>, <u>supra</u>, at 335. Suffice it to say, however, inasmuch as Plaintiff's placement in administrative segregation and on ICON status was not illegal, he cannot possibly prevail on this allegation. Indeed, Plaintiff misses the mark in his argument that his August and October 2005 infractions did not justify his two-day period of administrative segregation or his ICON designation. As Defendants' evidentiary forecast demonstrates, Plaintiff's record, and particularly his conduct from July 2005 up to October 2005, showed his poor response to less severe discipline and justified his ICON designation. Therefore, Plaintiff's Complaint must be <u>dismissed</u> in its entirety.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order, filed October 14, 2008 (document # 25) is **DISMISSED as moot**, see <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S.Ct. 365 (2008);

2. Plaintiff's Motion for a Copy of the Local Rules, filed October 14, 2008 (document # 26) is **DISMISSED as moot;**

3. Plaintiff's Motion for Appointment of Counsel, filed October 14, 2008 (document # 27) is **DENIED**, see <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985); <u>Cook v. Bounds</u>, 518 F.2d 779 (4th Cir. 1975);

4. Plaintiff's Motion for Emergency Preliminary Injunction and A Temporary Restraining Order, filed November 20, 2008 (document # 30) is **DISMISSED as moot**, see <u>Winter</u>, <u>supra</u>;

5. Plaintiff's Motion for Discovery Conference, filed January 21, 2009 (document # 35) is **DISMISSED as moot;**

6. Plaintiff's Motion for Preliminary Hearing and Pretrial Conference on Defendants' Summary Judgment Motion, filed January 21, 2009 (document # 36) is **DISMISSED as moot;**

7. Plaintiff's Motion for Filing Papers, filed January 21, 2009 (document # 37) is **DISMISSED** on the ground that his documents already were accepted and filed with the Court;

8. Defendants' Motion for a Protective Order, filed February 11, 2009 (document # 43) is **DISMISSED as moot;**

9. Defendants' Motion for Summary Judgment, filed November

11

20, 2008 (document # 32) is **GRANTED;** and

    10.  Plaintiff's Complaint is **DISMISSED** in its entirety.

    **SO ORDERED.**

                            Signed: October 9, 2009

                            Graham C. Mullen
                            United States District Judge